ADDIE L. KEAM v. CALISTA CONKWRIGHT ET AL.

*Judgment creditor's bill—Mortgage—Fraudulent transfer—Husband and wife.*

1. Complainant filed a creditors' bill to subject a mortgage, originally executed to defendant Levi Conkwright to secure part of the purchase price agreed to be paid on the sale of 80 acres of land owned by him, and which, after delivery, was changed so as to make defendant Calista Conkwright the mortgagee, to the satisfaction of a judgment in favor of complainant and against Levi Conkwright; and, on a review of the testimony, the Court find that such change was made with intent to defraud complainant, and affirm the decree below granting the relief prayed for.

2. The voluntary assignment of a mortgage to the mortgagee's wife, by substituting her name as mortgagee after the instrument has become operative by delivery, and without consideration, will not prevent the subjection of the mortgage to the equitable remedies of a judgment creditor of the husband, in order to apply it in satisfaction of the judgment.

3. Where land, paid for by a wife, is by mistake conveyed to the husband, and the wife sells the land as her own, and informs the purchaser that she is the owner, and both understand that

a purchase price mortgage shall be drawn in her favor, which, by a mistake of the scrivener, is drawn in favor of the husband, the correction of said mistake, after the delivery of the mortgage, by the consent of the mortgagor, by substituting the name of the wife as mortgagee, cannot be claimed to be in fraud of the husband's creditors, and need not be supported by a new consideration.

Appeal from Newaygo. (Palmer, J.) Argued October 22 and 23, 1889. Decided November 15, 1889.

Judgment creditor's bill. Defendant Calista Conkwright appeals. Affirmed. The facts are stated in the opinion.

*Fred A. Mann,* for complainant.

*Andrew Hanson* and *Dumon & Cogger,* for appellant.

CHAMPLIN, J. Levi Conkwright being indebted to Addie L. Keam upon a judgment rendered before a justice of the peace on September 16, 1885, for $136.53, and finding no goods or chattels to satisfy the same, a transcript was filed with the county clerk of Newaygo county on January 31, 1888. An execution was issued returnable February 21, 1888, at which time it was returned unsatisfied. Complainant then filed a judgment creditor's bill to reach equitable interests and things in action, and, after making the general charges usual in such bills, on belief charged that since the existence of her judgment the defendant therein was the owner in fee of a certain 80 acres of land, describing it, of the value of $1,200, and that on March 17, 1887, he conveyed the same by warranty deed to John Shaw, who as part payment therefor executed a mortgage back to said Levi Conkwright for the sum of $675, with interest at 6 per cent., payable as follows: One hundred and seventy-five dollars and interest, February 1, 1888, and the balance in annual

installments of $100, the interest to begin February 1, 1891; that, after the execution and delivery of such mortgage, the said Levi. Conkwright and Calista Conkwright, his wife, without consideration to support the same, and for the sole purpose of defrauding the creditors of said Levi Conkwright, and in particular said complainant of her judgment, erased the name of Levi Conkwright in said mortgage, and inserted in the place thereof the name of Calista Conkwright, with the knowledge and consent of said John Shaw.

The only controversy is over this mortgage. The bill was taken as confessed by Shaw. It called for an answer under oath, and Levi and Calista Conkwright filed a joint and several answer. Levi answers admitting the judgment and the indebtedness to Mrs. Keam, but denies having any property, equitable interests, etc. They jointly answer as to the mortgage in controversy as follows:

"That on or about May 1, 1881, the said Calista Conkwright was possessed of the sum of $200; that on or about that day she arranged to purchase the piece of land described in complainant's bill of complaint at the price or sum of $240,—$50 down, and the balance in installments of $50 per annum; that the whole sum of said $240 was paid by the said Calista Conkwright out of moneys belonging to her and earned by her; that the conveyance was by mistake drawn to run to Levi Conkwright instead of to Calista Conkwright; that the deed of conveyance was always in her possession, who thought that was sufficient security for her, and was never in the possession or control of Levi Conkwright.

"That in the beginning of the month of March, 1887, the said Calista Conkwright agreed to sell the land to John Shaw, and then told him that, although the same stood in the name of the said Levi Conkwright, it belonged to said Calista Conkwright. That on March 17, 1887, the defendant Levi, at the request of said Calista, executed a deed of conveyance of the said land to the said John Shaw; that on the same day a mortgage of the said land was executed by the said John Shaw in favor

of the said Levi Conkwright; that this mortgage was given in favor of the said Levi Conkwright by a mistake, as it was understood by the said John Shaw and Calista Conkwright that the same should be given in favor of Calista Conkwright; that the mistake was made by James Barton, of the township of Big Prairie, county of Newaygo, who drew the deeds, and took the acknowledgment of the mortgage and conveyance.

"That on March 18, 1887, the said Calista Conkwright, having found that a mistake had been made by the said James Barton, went with the said Levi Conkwright to the said James Barton, and informed him of the mistake he had made; that the said James Barton told the said Calista Conkwright that he would not alter the mortgage, but that if she went and saw John Shaw she could alter it in his presence and with his consent; that the said Levi Conkwright and Calista Conkwright saw the said John Shaw, and with his assistance, and by his consent, substituted the name of Calista Conkwright; that this alteration was not done for the purpose of defeating the claims of any creditor of the said Levi Conkwright; and particularly it was not done for the purpose of delaying, defeating, or defrauding the complainant herein, as the said Calista Conkwright did not know that a judgment had been obtained by the said Addie L. Keam against the said Levi Conkwright; that the whole of the money paid for the purchase of the land belonged to the said Calista Conkwright, and that the taxes on the said land were always paid by the said Calista Conkwright."

This answer was filed under oath, and replication was thereto made and proofs taken. Upon hearing, the court below decreed in favor of complainant, and the defendant Calista Conkwright alone appealed.

To substantiate the charges made in her bill, the complainant introduced a deed in evidence bearing date May 15, 1885, wherein the West Michigan Lumber Company conveyed the premises in question to Levi Conkwright for the consideration of $240. This deed was acknowledged on May 19, 1885, and recorded on November 18, 1885. She also introduced in evidence a warranty deed bearing date March 17, 1887, from Levi Conkwright and Calista,

his wife, to John Shaw, for the consideration of $1,000. This was recorded on March 18, 1888. She further proved by John Shaw that Conkwright told him that he owned the 80 acres, and wanted to sell it to him, and that he afterwards purchased it of Levi Conkwright for $1,000; that he paid him $25 cash, assumed a mortgage already upon the premises for $300, and secured the balance of the purchase money by a mortgage upon the land purchased for $675, running to Levi Conkwright; that Calista Conkwright never had any talk with him in regard to the sale of the place, and never claimed to own it, or any interest in it; that the deed and mortgage were drawn by Judge Barton, at his house; that Calista was there, and executed the deed, and she made no request that the mortgage should be made to her, and said nothing about the land belonging to her.

· That about a week or ten days after the mortgage was executed Mr. Conkwright asked him if he would have any objection to fixing the mortgage over to his wife, and he told him he would not; and so he went at it, and scratched out the name of " Levi," and inserted in place thereof "Calista." She was present, and Shaw has no knowledge of Mrs. Conkwright paying Levi anything for inserting her name in the mortgage.

" He said he wanted to cut off his heirs and assigns, and put her heirs and her assigns on."

The mortgage was not again acknowledged after the alteration, nor is there any testimony showing that it was after such alteration delivered to Calista Conkwright with intent to operate as a mortgage to her. She testified that she caused it to be recorded.

It appears from the testimony of Levi Conkwright that at the time the change was made in the name of the mortgagee he knew from what outsiders told him that the judgment had been rendered against him by the

justice. Mrs. Conkwright testified that she had no knowledge of the judgment, or of any indebtedness of her husband to Mrs. Keam. There is no testimony in the case showing that Mr. Conkwright had any other debts than this judgment, nor any other creditor than Mrs. Keam, at the time the alteration was made in the mortgage, nor, indeed, at any other time.

Upon the case so far made by the complainant, it may be said that it was made to appear that, at the time of the sale to Shaw, Levi Conkwright was the owner in fee of this land, worth $1,000; that he sold and conveyed the same to Shaw, and received back, as a part of the consideration, a mortgage for $675; that he was indebted to complainant, and caused an alteration to be made in the mortgage after it had become effective by delivery, the effect of which was, if valid in the manner it was made, to place the apparent ownership of such mortgage in his wife, Calista Conkwright, as fully as if he had assigned it to her in the ordinary method; that such assignment was voluntary, and without consideration. Under such circumstances, it would be subject to Mrs. Keam's equitable remedies, in order to apply it in satisfaction of her debt against Levi Conkwright.

To meet this case made by complainant, the defendants in their answer say that Calista bought and paid for the land conveyed by the West Michigan Lumber Company to Levi Conkwright, and that such deed to him was made by mistake to Levi, and should have been made to her; that she sold it as her own land to Shaw, whom she informed that she was the owner; and that it was understood by Shaw and herself that the mortgage should be drawn in her favor, but, by mistake made by James Barton, it was drawn to Levi, and the alteration was merely to correct such mistake.

If this theory and statement of facts is true, then

no fraud was or could have been perpetrated to the injury of Levi's creditors, and no consideration was necessary to have passed at the time the mistake was corrected. But the defendants have placed witnesses upon the stand whose testimony shows conclusively that there was no mistake in drafting the papers made by Barton, and Shaw denies that there was any such understanding.

Calista Conkwright testified in her own behalf, and said that she earned the money that was paid for the land, and the contract was made to him (Levi) because she hated to go where the men were to pay for it, so she thought it would be just as well for him to do it for her as for her to go and do it herself; that she earned $100 of Hays by cooking that went to pay for this place and clear it. The defendants also introduced as a witness John Bullman, who testified that he was present when the bargain was made for the purchase of the land from the West Michigan Lumber Company in the spring of 1881; that he made the bargain himself; that the contract in the first place was to be drawn to him, and was to be transferred to Levi Conkwright; that the payment was made by the difference in a yoke of cattle belonging to Calista Conkwright, and the deed, when given, was to run to Calista Conkwright, through the team being her own; that Calista gave as her reason for wanting the contract in his name instead of hers that she was sick during the time, and was not able to go down there herself, and left it for witness to attend to. Her counsel asked the witness the following question, to which he answered:

"Q. What I meant was the reason why the contract should run to Levi, and not to her.

"A. Yes, sir; it was through her being sick, and not being able to go down there."

This testimony does not accord with her testimony nor her answer, either in the manner the land was paid for, or the reason why the contract was made out to Levi as purchaser. Mrs. Conkwright also testified that she let her husband have the money she had earned in cooking for different lumbermen, from time to time, without taking his note, and also $450 pension money which she received for her first husband. It appears that this pension money was the first money she let him have, about 1880. This money he invested in a team of horses. It also appears from her testimony that he had paid her money from time to time upon these loans, but the amount neither he nor she is able to state. He never kept any account of the money borrowed nor the money paid, and she renders no account of the same. Levi Conkwright also testifies to borrowing money from time to time from his wife, and to paying her back at different times, from $5 to $50 at a time. He says that he and his wife had a "reckoning up" after the sale to Shaw, and before the papers were drawn, and found that he owed her a balance of $1,200, or about that, and he was asked by his counsel:

"*Q*. How did you arrive at this settlement?

"*A*. In this way: She was talking about selling, and I was owing her more than the place would amount to, and she told me that if I would have the mortgage run to her she would cancel our debt. That would be giving me over two hundred dollars, and I done it."

Later on he testified that they—

"Jumped accounts. I owed her at that time, I suppose, $1,200, but she called that all square.

"*Q*. On this settlement did you refer to any memorandum of account between yourself and wife?

"*A*. No, sir.

"*Q*. Were there any memorandums produced on that settlement?

"*A.* I had none."

It does not appear that either had any, and yet they settled an account that had been running over eight years, consisting of money borrowed in small amounts, and money paid from time to time, by "jumping accounts," and agreeing upon about $1,200 as the amount he owed her. She fixes the amount at $1,250. They both agree that he was to pay this debt out of the sale of the land to Shaw. And she testifies repeatedly that she credited Levi $675 on what he owed her, and that she received and gave him credit for the $25 paid down, and that the $300, being the first mortgage, was money which they had borrowed to enable George Conkwright to purchase a piece of land, and he was to pay her that sum.

The defense in this case will not bear investigation. If it be true that Mrs. Conkwright bought and paid the West Michigan Lumber Company for this land, it was, on the theory of the answer, hers, and the consideration received or agreed to be paid for it on the sale to Shaw was hers. Why, then, should she, on receiving payment from Shaw on a sale of her own property, credit it on a debt due to her from her husband? If the transaction was a real one, it was a very easy way for Levi to pay an indebtedness to his wife with her own property. Had the claim been that he purchased the land from the West Michigan Lumber Company, and paid for it with money which he had borrowed of his wife or otherwise, and took this method of paying her, it would have been more plausible. But such is not the defense set up. I am satisfied from the testimony that the land was purchased from the West Michigan Lumber Company by Levi Conkwright; that it was conveyed to him in pursuance of such purchase; that he was the real owner of it, and sold it to Shaw, and

received the mortgage back in accordance with the understanding of the parties at the time; that such mortgage was his in fact, and through no mistake; that Levi did not owe his wife $1,200 or any other considerable sum; and I am not satisfied that he owed her anything at the time of the alteration, which appears to me to have been an after-thought. I also am of the opinion that the conveyance of the mortgage from Levi to his wife was voluntary, and that it must be subjected to the payment of complainant's judgment.

The decree. will be affirmed, with costs.

The other Justices concurred.